**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

---

| | |
|---|---|
| **MALIK N. MARTIN,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** |
| | **5:23-cv-00029-TES** |
| **SONIA ADAMS, CHASE AMBROSE, and UNKNOWN DEPUTY,** | |
| *Defendants.* | |

---

**ORDER GRANTING PLAINTIFF'S APPLICATION FOR LEAVE
TO PROCEED *IN FORMA PAUPERIS* AND DIRECTING SERVICE**

---

Contemporaneously with his Complaint [Doc. 1], *pro se* Plaintiff Malik N. Martin

filed an "Application to Proceed in District Court Without Prepaying Fees or Cost"

[Doc. 2] seeking permission from the Court to allow him to proceed *in forma pauperis*.

**A.    Plaintiff's Application to Proceed *In Forma Pauperis***

Authority for granting permission to file a lawsuit without prepayment of fees

and costs is found at 28 U.S.C. § 1915, which provides as follows:

> [Generally], any court of the United States may authorize the
> commencement, prosecution or defense of any suit, action or proceeding,
> civil or criminal, or appeal therein, without prepayment of fees or security
> therefor, by a person who submits an affidavit that includes a statement of
> all assets such prisoner possesses that the person is unable to pay such fees
> or give security therefor.

28 U.S.C. § 1915(a)(1). "Despite the statute's use of the phrase 'prisoner possesses,' the

affidavit requirement applies to all persons requesting leave to proceed IFP." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 n.1 (11th Cir. 2004). By enacting the statute, Congress intended "to provide all indigent litigants with meaningful access to courts by removing the obstacle of poverty." *Taliaferro v. United States*, 677 F. App'x 536, 537 (11th Cir. 2017) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). An application is sufficient to warrant a waiver of filing fees if it "represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." *Martinez*, 364 F.3d at 1307. Thus, when an applicant shows that he is unable to pay the filing fees associated with initiating a lawsuit, the Court may permit that applicant to proceed without payment of fees or, stated differently, proceed *in forma pauperis* ("IFP").

Upon consideration of Plaintiff's Application, the Court finds that he is unable to pay the fees and costs of commencing this lawsuit in his current financial state. [Doc. 2, pp. 1–2]. Accordingly, the Court **GRANTS** Plaintiff's "Application to Proceed in District Court Without Prepaying Fees or Cost" [Doc. 2], and this case shall proceed without prepayment of fees.

### B.    <u>Frivolity Review</u>

However, when a district court grants IFP status for a non-incarcerated individual, it still must conduct a frivolity review of the accompanying complaint under 28 U.S.C. § 1915(e). Section 1915(e) obligates a district court to dismiss a case at any time

if it is determined that the claims asserted therein are frivolous or malicious; fail to state a claim on which relief may be granted; or seek monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

As with all cases, the Court must accept the factual allegations from Plaintiff's Complaint as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and because he is proceeding *pro se*, his Complaint is "held to a less stringent standard" and "liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998); *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). Frivolity review, however, under § 1915(e) serves to discourage the filing of baseless lawsuits that paying litigants generally do not initiate due to filing costs and the potential threat of sanctions associated with filing a civil action. *Neitzke*, 490 U.S. at 327. "[T]he statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* Claims within the latter category call for dismissal on grounds of frivolousness under § 1915(e)(2)(B)(i) while claims under the former are subject to dismissal for failure to state a claim under § 1915(e)(2)(B)(ii). In other words, "[w]hen a [claim] raises an arguable question of law which the district court ultimately finds is correctly resolved against [a] plaintiff," it can be dismissed for failure to state a claim. *Id.* at 328.

With those principles in mind, the Court examines the factual allegations

asserted in Plaintiff's Complaint and the claims he asserts based on those facts.

　　　　1.　　Plaintiff's Allegations

Plaintiff claims that on January 25, 2021, Defendant Chase Ambrose, who was employed by the Animal Services Division of the Bibb County Sheriff's Office, came to his house "to pick up a litter of cute[,] lovely puppies." [Doc. 1, ¶ 6, 11]. According to his Compliant, Plaintiff alleges that the *reason* Defendant Ambrose "was *dispatched* to" his residence was because "it was against" a local ordinance "to have th[at] many dogs." [*Id.* at ¶ 11] (emphasis added). Plaintiff printed his name and signed an "Animal Release Form." [*Id.* at ¶ 15].

While collecting the puppies though, Defendant Ambrose "managed to knock a glass jar to the ground and break[] it." [*Id.* at ¶ 12]. After seeing the broken glass, Plaintiff "admonished" Defendant Ambrose and told him that he was going to file a police report against him and sue him. [*Id.* at ¶ 13]. Apparently, Defendant Ambrose then "became loud, animated[,] and hostile" and demanded that Plaintiff produce identification "as it was a requisite." [*Id.* at ¶ 14]. Plaintiff declined, asserting that he wasn't legally required to produce identification in Georgia "unless he is suspected of having committed a crime[.]" [*Id.* at ¶ 15].

Defendant Ambrose then contacted his supervisor, Defendant Sonia Adams, and explained to her that he had "accidentally broke" Plaintiff's glass jar and that Plaintiff was "vowing to file a [c]omplaint . . . and sue them." [*Id.* at ¶¶ 5, 16]. Via Defendant

Ambrose's phone, Defendant Adams spoke to Plaintiff, and he claims that she "angrily demand[ed]" that he produce identification "as it was needed for [their] records[.]" [*Id.* at ¶ 17]. According to the Complaint, Defendant Adams also told Plaintiff that his "failure to produce his [identification] w[ould] resort in her dispatching [a] Bibb County Sheriff's Deputy to forcibly obtain [it]." [*Id.*].

Still though, Plaintiff declined to produce any identification and further "insisted [that] he [was] not legally required to [do so] unless he is suspected of having committed a crime." [*Id.* at ¶ 18]. But, "[i]n an effort to deescalate the situation"—which Plaintiff claims was "getting volatile[]"—he conceded to Defendants Ambrose and Adams that he "no longer wishe[d] to file" any sort of report and simply wanted "th[e] ordeal to end" and for him to "be left alone." [*Id.* at ¶ 18(a)]. At that point, Defendant Adams ordered Defendant Ambrose to leave Plaintiff's property and "wait in the street for [a] [d]eputy" to arrive. [*Id.* at ¶ 19].

Soon after, two deputies arrived, one of whom is sued in his individual capacity and named as "Unknown Deputy" in this action. [*Id.* at ¶¶ 8, 20]. Plaintiff immediately "placed [the two deputies] on notice . . . to not enter his property but [to] stand [o]n the property line." [*Id.* at ¶ 20]. With Plaintiff inside his fenced yard, but within arm's length of the two deputies, Defendant Ambrose informed them that Plaintiff refused to produce the identification that was supposedly required for the Animal Services Division's records. [*Id.* at ¶¶ 20(a), 21]. As Defendant Ambrose spoke to the two

deputies, Plaintiff interjected and insisted "that [identification] is not required as it's protected against infringement by the [Fourth] Amendment." [*Id.* at ¶ 22].

From there, in an effort to ascertain Plaintiff's name and date of birth, Unknown Deputy asked Defendant Ambrose whether he could recall Plaintiff's vehicle registration number. [*Id.* at ¶ 23]. However, just moments before the two deputies arrived at his residence, Plaintiff managed to reposition his vehicle so that its license plate wasn't visible from street view. [*Id.* at ¶¶ 23–24]. When Defendant Ambrose informed Unknown Deputy "that he didn't have the license plate number[,]" the Unknown Deputy stepped onto Plaintiff's property. [*Id.* at ¶¶ 24–25]. "For a total of six times," Plaintiff claims that he objected to Unknown Deputy coming onto his property, and Unknown Deputy replied, "[W]e just need your name[.] [T]hat's all." [*Id.* at ¶ 26]. Once at the rear of Plaintiff's vehicle, Unknown Deputy recorded its registration number and radioed it to dispatch. [*Id.* at ¶ 27]. Unknown Deputy then walked back to his patrol vehicle, reemerged, and gave Defendant Ambrose a piece of paper that presumably contained Plaintiff's name and date of birth. [*Id.* at ¶ 28]. "[F]eeling victimized, terrorized[,] and distraught[,]" Plaintiff demanded Unknown Deputy's name and badge number. [*Id.* at ¶ 29]. Neither were provided to Plaintiff, and Defendant Ambrose and Unknown Deputy got in their vehicles and left. [*Id.*].

    2.    <u>Plaintiff's Claims</u>

Based on those facts, Plaintiff asserts the following claims in his Complaint: (1) a

First Amendment retaliation claim, (2) a claim for violation of the Fourth Amendment,

(3) a Fourteenth Amendment Substantive Due Process claim, and (4) a claim of

respondeat superior—all brought pursuant to 42 U.S.C. § 1983. [Doc. 1, pp. 7–11].

Plaintiff also asserts (5) discrimination and (6) retaliation claims under 42 U.S.C. § 1981

as well as state-law claims for (7) trespass and (8) civil conspiracy under O.C.G.A. §§ 51-

9-4 and 51-12-30, respectively. [*Id.* at pp. 11–16]. Defendants Adams, Ambrose, and

Unknown Deputy are sued in their individual capacities. [*Id.* at ¶¶ 5–6, 8].

Although Plaintiff's claims are discernable, the presentment of his Complaint

verges on an impermissible shotgun pleading. The Eleventh Circuit has identified four

types of "shotgun pleadings." *McDonough v. City of Homestead*, 771 F. App'x 952, 955

(11th Cir. 2019). Such complaints are characterized by:

> (1) multiple counts that each adopt the allegations of all preceding counts;
> (2) conclusory, vague, and immaterial facts that do not clearly connect to a
> particular cause of action; (3) failing to separate each cause of action or
> claim for relief into distinct counts; or (4) combining multiple claims against
> multiple defendants without specifying which defendant is responsible for
> which act.

*Id.* Of these, "[t]he most common type" of shotgun pleading "by a long shot[,] is a

complaint containing multiple counts where each count adopts the allegations of all

preceding counts, causing each successive count to carry all that came before and the

last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cty.*

*Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). To explain the Court's concern with

Plaintiff's Complaint (as it is currently drafted), the inherent issue in this type of

pleading is that the district court, as well as all named defendants, must "cull through [all factual] allegations, identify the claims, and, as to each claim identified, select the allegations that appear to be germane to the claim." *Ledford v. Peeples*, 657 F.3d 1222, 1239 (11th Cir. 2011); *see also Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). The onus to "sift through facts presented" in an effort to determine which factual allegations apply to which claims, or which defendant for that matter, should never fall to a defendant or to a district court. *Bryant v. Norfolk S. R.R.*, No. 5:20-cv-00225-TES, 2020 WL 5521044, at *5 (M.D. Ga. Sept. 14, 2020); *see also Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1385 (11th Cir. 2020) ("It is not the proper function of courts in this Circuit to parse out such incomprehensible allegations, which is why we have stated that a district court that receives a shotgun pleading should strike it and instruct counsel to replead the case—even if the other party does not move the court to strike the pleading.").

To be sure, Plaintiff incorporates all of the factual allegations contained in the first 29 paragraphs of his Complaint as support for each of his separate claims. *See, e.g.*, [Doc. 1, ¶¶ 30, 34, 38, 54, 57]. However, his factual allegations "are informative enough to permit a court to readily determine if they stated a claim upon which relief could be granted[.]" *Weiland,* 792 F.3d at 1326. Thus, the Court will not order Plaintiff to recast his Complaint, but he should be aware of what constitutes a shotgun pleading should he seek leave to amend his Complaint in the future.

8

### 1.      42 U.S.C. § 1983

In order to prevail in a civil rights action under § 1983, "a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege[,] or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." *Tisdale v. Gravitt*, 51 F. Supp. 3d 1378, 1388 (N.D. Ga. 2014) (quoting *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

### a.      First Amendment Retaliation Claim

In order to state a claim of retaliation for exercising rights under the First Amendment, a plaintiff must be able to truthfully allege facts establishing that (1) "his speech or act was constitutionally protected," (2) that he "suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech," and (3) that "there is a causal connection between the retaliatory actions and the adverse effect on speech." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011); *Hartman v. Moor*, 547 U.S. 250, 261 (2006). It has long been established that "the First Amendment protects a significant amount of verbal criticism and challenge directed at [government] officers[]" acting under color of law. *City of Houston v. Hill*, 482 U.S. 451, 452 (1987); *see also Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). Indeed, "[t]he freedom of individuals [to] verbally . . . oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a

free nation from a police state." *Id.*

For these reasons, the Court finds that when the facts alleged are taken as true—Plaintiff has stated a plausible First Amendment retaliation claim against Defendants Adams, Ambrose, and Unknown Deputy, and it may proceed for further factual development.

b.    <u>Fourth Amendment Claim</u>

The Fourth Amendment protects individuals from unreasonable governmental intrusion into their "persons, houses, papers, and effects." *McLaughlin v. Elsberry, Inc.*, 868 F.2d 1525, 1529 (11th Cir. 1988). In addition to protecting the privacy within the house itself, the Fourth Amendment also protects the curtilage of the house, that is, the area immediately surrounding a dwelling house. *United States v. Dunn*, 480 U.S. 294, 300 (1987); *see also United States v. Taylor*, 458 F.3d 1201, 1206 (11th Cir. 2006). In that regard, "an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." *Oliver v. United States*, 466 U.S. 170, 178 (1984). Further, "[a] perimeter fence around the property does not create a constitutionally protected interest in all open fields on the property." *Taylor*, 458 F.3d at 1208. To determine whether property is curtilage versus an open field, courts must consider four factors: (1) "the proximity of the area claimed to be curtilage to the home," (2) "whether the area is included within an enclosure surrounding the home," (3) "the nature of the uses to which the area is put," and (4) "the steps taken by

the resident to protect the area from observation by people passing by." *Dunn*, 480 U.S.

at 301; *see also Oliver*, 466 U.S. at 180 n.11 ("An open field need be neither 'open' nor a

'field' as those terms are used in common speech.").

Further, a warrantless entry into the home or curtilage is unreasonable and,

therefore, in violation of the Fourth Amendment, subject to only two exceptions:

consent or "exigent circumstances." *McClish v. Nugent*, 483 F.3d 1231, 1240–41 (11th Cir.

2007); *see also Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984) ("[E]xceptions to the

warrant requirement are 'few in number and carefully delineated,' and the police bear a

heavy burden when attempting to demonstrate an urgent need that might justify

warrantless searches and arrests."). Consent is not implicated in this case. *See, e.g.*, [Doc.

1, ¶¶ 26, 36]. Thus, the Court finds that when the facts alleged are taken as true, Plaintiff

has stated a plausible Fourth Amendment claim against Defendants Ambrose and

Unknown Deputy, and it may proceed for further factual development.

With respect to Defendant Adams, who Plaintiff alleges was Defendant

Ambrose's supervisor and who was not physically present at his house, "the standard

to impose liability upon h[er] is 'extremely rigorous.'" *Gainor v. Douglas Cty.*, 59 F. Supp.

2d 1259, 1290 (N.D. Ga. 1998) (citing *Braddy v. Fla. Dept. of Labor and Emp't Sec.*, 133 F.3d

797, 802 (11th Cir. 1998)). A supervisor's liability becomes an issue "either when the

supervisor personally participates in the alleged constitutional violation or when there

is a causal connection between actions of the supervisory official and the alleged

constitutional deprivation." *Gainor*, 59 F. Supp. 2d at 1290 (citing *Braddy*, 133 F.3d at 801); *see also Skop v. City of Atlanta*, 485 F.3d 1130, 1145 (11th Cir. 2007).

For these reasons, the Court finds that when the facts alleged are taken as true, Plaintiff has stated a plausible Fourth Amendment claim against Defendant Adams as well, and it may proceed against her for further factual development.

c.   Substantive Due Process Claim

As for Plaintiff's substantive due process claim, he generally asserts that Defendants violated his substantive due process right to the lawful use of his property. *See, e.g.*, [Doc. 1, ¶¶ 12, 20–29]. First and foremost, the Fourteenth Amendment's Substantive Due Process Clause states, simply, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In making a substantive due process claim asserting that government officials have abused their power, a plaintiff must allege facts which "shocks the conscience" and violates the "decencies of civilized conduct." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The conduct alleged must reveal an improper motive on the part of the government actor and involve decisions that were "pretextual, arbitrary and capricious and . . . without any rational basis." *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1577 (11th Cir. 1989) (citation omitted).

Here, generally speaking, the alleged "conscience-shocking," "pretextual," and "arbitrary" conduct could be Defendant Adams telling Plaintiff that she was going to

12

dispatch a sheriff's deputy to "forcibly obtain" identification from Plaintiff. [Doc. 1, ¶ 17]. It could also be, for obvious reasons, Unknown Deputy entering Plaintiff's property without his consent, without a warrant, and (based on the Complaint) without any exigent circumstances to record Plaintiff's vehicle's registration number. [*Id.* at ¶¶ 26–27]. As it turns out, the factual allegations that Plaintiff uses to support his substantive due process claim are perfectly encapsulated in his other two constitutional claims.

Thus, heeding the Eleventh Circuit's very recent guidance on the Fourteenth Amendment's Substantive Due Process Clause, the Court recognizes that it "should be particularly reluctant to indulge . . . arguments [on substantive due process] when an actual constitutional provision addresses the sort of injury that a complainant alleges." *Sosa v. Martin Cty.*, --- F.4th ----, 2023 WL 328389, at *7 (11th Cir. Jan. 20, 2023) (Newsom, J., concurring). That's exactly what we have here.

When "a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Id.* at *8 (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)) (plurality op.); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989). Accordingly, the Supreme Court has stressed, "if a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States*

*v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

Since the First and Fourth Amendments unquestionably supply Plaintiff with the actual constitutional provisions he needs, there is no need for him to repackage his factual allegations under the guise of substantive due process. *Sosa*, 2023 WL 328389, at *9. Those *actual* constitutional provisions offer the remedy Plaintiff seeks in this case. *Id.* at *8. So, pursuant to § 1915(e)(2)(B)(ii), the Court **DISMISSES** Plaintiff's Fourteenth Amendment Substantive Due Process claim **without prejudice**.

d.   <u>Respondeat Superior</u>

Lastly, "as a political subdivision," Plaintiff asserts liability based on an alleged failure to train on behalf of Bibb County. [Doc. 1, ¶ 40]. In *Monell v. New York City Department of Social Services*, the Supreme Court decided that a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. 436 U.S. 658, 691 (1978). Respondeat superior or vicarious liability will not attach under § 1983. *Id.* In other words, a plaintiff cannot rely upon the doctrine of respondeat superior to hold the government liable. *Id.* at 693–94. Instead, he must establish that the government unit has a "policy or custom" that caused the injury. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

"[A]t all times relevant[,]" Plaintiff claims that Defendant Adams "is" and Defendant Ambrose "was employed by Bibb County" and that Unknown Deputy "was employed by [the] Bibb County" Sheriff's Office. [Doc. 1, ¶¶ 5–6, 8, 40]. In support of

his efforts to recover on a "failure to train" theory, Plaintiff alleges that Defendants Adams and Ambrose and Unknown Deputy "were acting within the scope and structure of [the Animal Services Division's] directives . . . which require[d] them to demand, coerce, intimidate, [and] harass Bibb County [r]esidents to [p]roduce and [p]resent" identification "for their records." [*Id.* at ¶ 40]. Plaintiff further alleges that "[i]n the event of a refusal[,]" the Animal Services Division "is required to dispatch [a]rmed [d]eputies to the [r]esident's home and conduct a search of his [or] her property and person in effort to ascertain and [identify] the resident." [*Id.*].

"In limited circumstances, a local government's decision not to train certain employees . . . *to avoid violating citizens' rights* may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (emphasis added). However, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62. For liability to attach, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* at 61 (quoting *Canton*, 489 U.S. at 388). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Canton*, 489 U.S. at 388–89.

Notwithstanding the foregoing with respect to Plaintiff's efforts to hold Bibb County liable for the creation of the Animal Services Division's alleged "directives," he has not named Bibb County as a defendant in his Complaint. [Doc. 1, ¶ 40]; *see also* [Doc. 1, p. 1]. Without Bibb County named as a defendant to support his § 1983 claim based on a "failure to train" theory, Plaintiff fails to state a claim. Accordingly, the Court **DISMISSES** Plaintiff's failure-to-train claim **without prejudice** pursuant to § 1915(e)(2)(B)(ii).

### 2.     *42 U.S.C. § 1981*

Next, Plaintiff asserts race discrimination and retaliation claims under 42 U.S.C. § 1981. [Doc. 1, pp. 11–14].

#### a.     Race Discrimination Under § 1981

Stating a claim of race discrimination under § 1981 requires a plaintiff to allege facts establishing "(1) that [he] is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004). One "of the activities enumerated in the statute" is the "making and enforcing" of contracts. 42 U.S.C. § 1981(b). To prove race discrimination in the making and enforcement of contracts, a plaintiff must allege that the discrimination "caused a contractual injury." *Zidayat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021). "A contractual injury includes any injury relating to

'the making, performance, modification, or termination of the contract,' or 'the

enjoyment of all benefits, privileges, terms, and conditions of the contractual

relationship.'" *Id.* (quoting 42 U.S.C. § 1981(b)).

In the caption of his Complaint, Plaintiff states that he is a "[r]acial [m]inority

[p]laintiff." [Doc. 1, p. 1]. Further, as to his § 1981 claim, Plaintiff alleges that he and

Defendant Ambrose scheduled a time for the puppies to be picked up "[t]hrough a

contractual agreement[.]" [*Id.* at ¶ 44]. To the extent Defendant Ambrose (though the

Animal Services Division) had a duty—contractual or otherwise—to collect puppies,

Plaintiff alleges that he was not afforded the same "right to enjoy the benefits,

privileges, terms[,] and conditions of his contractual agreement" when compared to

"white [c]itizens." [*Id.* at ¶ 51].

When it comes to proving race discrimination, "[a] plaintiff may use either direct

evidence or circumstantial evidence." *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022).

"To state a claim for direct racial discrimination, a plaintiff must allege the overt

invocation of race by the alleged discriminator—for instance, the use of a racial slur or

racially charged language." *Nganga v. Robins Federal Credit Union*, No. 5:22-CV-144

(MTT), 2022 WL 14786941, at *3 (Oct. 25, 2022) (quoting *Zidayat*, 3 F.4th at 1296).

Here, Plaintiff ostensibly relies on circumstantial evidence because his Complaint

makes no allegation that his race was ever mentioned by anyone during the "ordeal"

surrounding the collection of the puppies. [Doc. 1, ¶ 18(a)]. In support his § 1981 race

discrimination claim Plaintiff alleges that in October of 2020, a white woman who lives less than ten miles from him, "turned over her litter of [k]ittens and one [d]og" to the Animal Services Division without ever being asked for identification. [*Id.* at ¶ 52]. What he *does not* allege, though, is that it was Defendant Ambrose who went to collect those kittens. Nevertheless, based on Plaintiff's relatively thin factual allegations, the Court finds that he has pled facts sufficient to plausibly state a race discrimination claim under § 1981, and it should proceed for further factual development.

b.      Retaliation Under § 1981

To establish a claim of retaliation under § 1981, "a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). Broadly speaking, Plaintiff alleges that Defendants' actions in this case "deprived" him (1) of his right to free speech, "to freely criticize . . . [s]tate actors" and (2) of his right to "enjoy[] . . . his home." [Doc. 1, ¶¶ 32, 59]. Taking his factual allegations as true, which the Court must at this stage, the Court finds that Plaintiff's § 1981 retaliation claim should proceed for further factual development.

3.      *State-Law Claims*

Relying on two Georgia statutes, O.C.G.A. §§ 51-9-4 and 51-12-30, Plaintiff asserts state-law claims for trespass to land and civil conspiracy. [Doc. 1, pp. 14–16].

Under Georgia law, a civil conspiracy exists when two or more persons agree "to do some unlawful act which is a tort or else to do some lawful act by [unlawful means] which constitute a tort." *Summer–Minter & Assocs. v. Giordano*, 184 S.E.2d 152, 154 (Ga. 1971); *see also Dyer v. Honea*, 557 S.E.2d 20, 25 (Ga. Ct. App. 2001) ("A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means."). Thus, a cause of action for civil conspiracy lies not in the conspiracy itself, but in the underlying tort—here, trespass. *Dyer*, 557 S.E.2d at 25.

"As a general rule, a trespass is a wrongful interference with the right to the exclusive use and benefit of a property right." *Petree v. Dep't of Transp.*, 798 S.E.2d 482, 490 (Ga. Ct. App. 2017). Moreover, under Georgia law, "[t]he right of enjoyment of private property [is] an absolute right of every citizen," and Georgia law recognizes that "every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie." O.C.G.A. § 51-9-1.

In his Complaint, Plaintiff alleges that Unknown Deputy, "*under the directives of*" Defendants Adams and Ambrose, unlawfully entered his property against his will to make him lose "enjoyment of his home." [Doc. 1, ¶¶ 55, 58–59] (emphasis added). Taking these allegations as true, the Court finds that Plaintiff's state-law claims should proceed for further factual development.

**C.    Conclusion**

In liberally construing his factual allegations and viewing them in the light most

favorable to him, the Court concludes that certain claims asserted in Plaintiff's

Complaint pass muster after frivolity review. Under 42 U.S.C. § 1983, Plaintiff has

generally pled a retaliation claim under the First Amendment and a claim for violation

of the Fourth Amendment. He has also generally pled race discrimination and

retaliation claims under 42 U.S.C. § 1981 as well as potential state-law claims.

Accordingly, the Court **ORDERS** service on Defendants Sonia Adams and Chase

Ambrose by the United States Marshal Service. *See* Fed. R. Civ. P. 4(c)(3). However, for

the reasons discussed above, the Court **DISMISSES without prejudice** Plaintiff's

Fourteenth Amendment Substantive Due Process claim and his failure-to-train claim

brought pursuant to 42 U.S.C. § 1983.

### D.    Duty to Advise of Address Change

During the pendency of this action, all parties shall keep the Clerk of Court and

all opposing attorneys and/or parties advised of their current address. Failure to

promptly advise the Clerk of a change of address may result in the dismissal of a

party's pleadings.

### E.    Duty to Prosecute Action

Plaintiff is also advised that he must diligently prosecute this action or face the

possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil

Procedure for failure to prosecute. Defendants are similarly advised that they are

expected to diligently defend all allegations made against them and to file timely

dispositive motions where appropriate. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

**F.      Filings and Service of Pleadings, Motions, and Correspondence**

It is the responsibility of each party to file original pleadings, motions, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any pleadings, motions, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all pleadings, motions, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

**G.      Discovery**

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of any defendant. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or such other response as may be appropriate under Federal Rule of Civil Procedure 12 has been filed, the Court will issue its standard Rules 16/26 Order for discovery and other

purposes.

**H.**     **Requests for Dismissal and/or Judgment**

The Court shall not consider requests for dismissal of or judgment in this action,

absent the filing of a motion therefor accompanied by a brief/memorandum of law

citing supporting authorities.

**SO ORDERED**, this 31st day of January, 2023.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**