IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

MALIK N. MARTIN,                          :
                                          :
        Plaintiff,                        :
                                          :
v.                                        :
                                          :        No. 5:23-CV-29 (CAR)
SONIA ADAMS, CHASE AMBROSE,   :
and BRIAN DAVIS, JR.,                     :
                                          :
        Defendants.                       :
_____ :

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Malik N. Martin, proceeding *pro se*, asserts claims under 42 U.S.C. § 1983

and Georgia State Law against Bibb County Animal Enforcement Director Sonia

Adams, Bibb County Animal Enforcement Officer Chase Ambrose, and Bibb County

Sheriff's Deputy Brian Davis, Jr., alleging they violated his Fourth and First

Amendment rights, engaged in a conspiracy, and unlawfully trespassed after removing

dogs from his property.[1]  Defendants have moved for summary judgment on all claims.

---

[1] In his original Complaint, Plaintiff also asserted claims for race discrimination and retaliation under 42 U.S.C. § 1981. Plaintiff, however, did not address Defendants' arguments on summary judgment that his § 1981 claims fail as a matter of law, and he did not include such claims in his Amended Complaint [Doc. 45]. Thus, Plaintiff has abandoned his § 1981 race discrimination and retaliation claims. *See, e.g., Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (affirming that a claim is abandoned where presented in the complaint but not raised in a party's response to a motion for summary judgment); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1999) (explaining that when a party fails to address a claim at summary judgment, the claim has been abandoned). Even if Plaintiff had not abandoned such claims, they fail as a matter of law. First, § 1981 claims brought against state actors, as Defendants are in this case, must be brought under § 1983. *See, e.g., Bryant v. Jones*, 575 F.3d 1281, 1288 n. 1 (11th Cir. 2009)

For the reasons set forth below, Defendants' Motions for Summary Judgment [Docs. 31, 32, and 50] are **GRANTED**.[2]

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[4] Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[5] When ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the party opposing the motion.[6]

---

(explaining that the Eleventh Circuit has "held that § 1981 does not provide an implicit cause of action against state actors; therefore, § 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981") (citing *Butts v. Cnty. of Volusia*, 222 F.3d 891, 894-95 (11th Cir. 2000)). Second, if the Court construes such claims to be brought under § 1983, Plaintiff has wholly failed to establish facts to show any Defendant acted with discriminatory intent, that Plaintiff suffered a materially adverse action, that any such adverse action would dissuade a reasonable person from engaging in protected activity, or that Plaintiff's race played any role in the events of this case.

[2] Plaintiff filed a pleading entitled "Motion for Summary Judgment" that the Court construed as an Amended Complaint. *See* Doc. 45. Even if Plaintiff's request for summary judgment was proper, it is hereby DENIED for the reasons set forth in this Order.

[3] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[5] *See id.* at 249-52.

[6] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[7]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[8]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[9]

As a *pro se* litigant, Plaintiff is held "to a less stringent standard than formal pleadings drafted by lawyers."[10]  Nevertheless, Plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law," including those applicable on summary judgment.[11]

## BACKGROUND

The record contains video evidence from body cameras of three officers involved in this case. The United States Supreme Court has recognized a "wrinkle" in cases where

---

[7] *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).

[8] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324-26.

[9] *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

[10] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[11] *Hillemann v. Univ. of Cent. Fla.*, 411 F.Supp.2d 1354, 1358–59 (M.D. Fla. 2004), *aff'd*, 167 F. App'x 747 (11th Cir. 2006) (internal quotation marks omitted).

the record contains video evidence, holding that when facts are disputed, and video evidence is present, a court should "view[ ] the facts in the light depicted by the videotape."[12] Following the Supreme Court and viewing the facts in the light most favorable to Plaintiff, the evidence reveals the following:

On January 25, 2021, Defendant Ambrose, employed in the Bibb County Sheriff's Office ("BCSO") Animal Services Unit as an Animal Enforcement Officer, responded to Plaintiff's request to have his dog and her five puppies removed from his property because, as Plaintiff admits, "it was against Macon Bibb City Ordinance to have those [sic] many dogs."[13] As an Animal Enforcement Officer, Defendant Ambrose was responsible for responding to citizen calls and complaints regarding animals and for enforcing Macon-Bibb County ordinances concerning animals, including ordinances that require animal restraint, humane care, and spay/neuter of dogs and cats.[14] A month before, on December 29, 2020, Defendant Ambrose had responded to Plaintiff's residence after a neighbor complained about Plaintiff's dogs, and Ambrose warned Plaintiff if he kept the dogs he would receive citations.[15]

---

[12] *Scott v. Harris*, 550 U.S. 372, 381 (2007).
[13] Pl. Compl. ¶ 11 [Doc. 1].
[14] Patterson Aff. ¶ 9 [Doc. 32-3].
[15] Ex. H, Report Activity Card [Doc. 35-8].

4

When Defendant Ambrose arrived on January 25, Plaintiff's female dog was in the street, and her five puppies were in the fenced yard in the front of Plaintiff's house.[16] Plaintiff helped Defendant Ambrose retrieve the puppies, and in the process of retrieving the puppies, Defendant Ambrose knocked a glass jar to the ground, causing it to break.[17]

After the puppies were loaded in the Animal Services vehicle, Defendant Ambrose told Plaintiff he needed to sign some paperwork and asked Plaintiff to provide his identification.[18] Plaintiff stated he did not have any identification, and he would not provide any social security number "to the government."[19] Defendant Ambrose then asked him to sign and print his name on the Animal Services owner surrender card, and Plaintiff did so.[20]

Defendant Ambrose then called his supervisor, Defendant Sonia Adams. Defendant Adams was the Animal Enforcement Director responsible for operation of the Animal Enforcement section of the BCSO Animal Services Unit, including direct supervision of Animal Enforcement Officers.[21] Ambrose informed Adams that he was

---

[16] Ex. H, Report Activity Card [Doc. 35-8].
[17] Ambrose Body Cam Video, Axon Body 3 X6032684X 12:02:30-12:06:10; Pl. Compl. ¶ 12.
[18] Ambrose Body Cam Video 12:06:54-12:07:08.
[19] *Id*. at 12:07:09-12:07:26.
[20] *Id*. at 12:07:39-12:07:50.
[21] Patterson Aff. ¶ 9.

going to cite Plaintiff for his female dog not being spayed, but Plaintiff would not provide any identification.[22] Defendant Adams then spoke to Plaintiff through Ambrose's speaker phone and informed Plaintiff that they needed his date of birth, so Ambrose could issue some citations. Adams explained that if Plaintiff complied with the citations (had his dog spayed and given a rabies shot) before the court date provided on the citation, the citations would be dismissed.[23] Plaintiff would not provide his date of birth or other identifying information; thus, Defendant Adams contacted the E-911 Center and requested the assistance of a BCSO deputy at the scene due to Plaintiff's failure to comply with their instructions.[24]

While waiting on a BCSO sheriff's deputy to arrive, Plaintiff told Defendant Ambrose that he wanted to talk to Defendant Adams about Ambrose breaking the jar on his property.[25] Ambrose called Adams a second time and informed her that he had broken Plaintiff's jar; Adams stated that the BCSO deputy could take Plaintiff's report, and she would fill out a property damage report.[26] Plaintiff spoke with Adams and inquired into the reasons he would be receiving a citation; Plaintiff explained that he did

---

[22] Ambrose Body Cam Video 12:07:55; 12:08:29-12:08:45.

[23] *Id.* at 12:09:21-12:10:17.

[24] *Id.* at 12:10:43-12:11:03.

[25] *Id.* at 12:11:32-12:11:43.

[26] *Id.* at 12:11:56-12:12:24.

not want to keep any of the dogs; therefore he needed no citation; and he stated he did not want to file a report about the broken jar.[27] After determining that the animal shelter had space for Plaintiff's female dog, Adams explained to Ambrose that no citation was necessary; but she told Ambrose that Plaintiff needed to tell the BCSO deputy when the deputy arrived that Plaintiff did not want to file a report about the broken jar, and she needed a copy of Plaintiff's identification or driver's license.[28]

When Defendant Ambrose first arrived at Plaintiff's residence, Plaintiff's vehicle was parked at the bottom of his driveway with his license plate facing the street.[29] While waiting for a BCSO sheriff's deputy to arrive, Plaintiff moved his vehicle, turned it around, and backed it into his driveway so that the license plate was no longer facing the street.[30] The video evidence shows that Plaintiff's driveway abuts the street and is the entryway to Plaintiff's residence. At the top of the driveway is a covered carport next to the house. Two cars were parked in the driveway. No car was parked in the carport. The front yard next to the driveway is fenced in, but the driveway is not enclosed by a fence or any other barrier.

---

[27] *Id.* at 12:12:24-12:14:32.
[28] *Id.* at 12:17:05-12:18:45.
[29] *See Id.* generally.
[30] Compl. ¶ 23; Ambrose Body Cam Video 12:24:25-12:25; Report Activity Card.

Two BCSO deputies arrived on the scene, including Defendant Brian Davis, Jr. Plaintiff held a camera that he purportedly used to film the officers.[31] Plaintiff complained that officers were violating his constitutional rights and told the officers he was going to file a federal lawsuit against them. Defendant Ambrose explained the situation to Defendant Davis, including that Plaintiff refused to provide his identification.[32] Over Plaintiff's complaints, Defendant Davis walked approximately 20 steps up Plaintiff's driveway to the rear of Plaintiff's parked vehicle at the end of the driveway closest to the street and wrote down the license plate number.[33] Defendant Davis did not enter the carport at the top of the driveway. Davis then went back to his vehicle, ran the license plate number, got Plaintiff's name and date of birth, and gave the information to Defendant Ambrose.[34] No officer interfered, attempted to interfere, or reacted to Plaintiff's filming of the events; nor did they react to Plaintiff's statements. Plaintiff was not arrested or given any citation, and he elected not to file a report for the broken jar.

## DISCUSSION

---

[31] Any video Plaintiff recorded is not part of the record in this case.

[32] Ambrose Body Cam Video 12:29:32-12:30-58.

[33] Davis Body Cam Video.

[34] Davis Body Cam Video; Barron Body Cam Video; Ambrose Body Cam Video.

Plaintiff filed this suit under 42 U.S.C. § 1983 for violations of his Fourth and First Amendment rights, and under Georgia law for trespass and conspiracy. As explained below, Defendants are entitled to summary judgment on each claim.

## I.  42 U.S.C. § 1983

Section 1983 provides private citizens a cause of action against persons who violate their constitutional rights while acting under color of state law.[35] Plaintiff contends Defendant Davis violated his Fourth Amendment right to be free from unlawful searches when he entered his driveway and obtained the license plate information, and Defendants violated his First Amendment rights when they requested he provide his identification, when Defendant Adams dispatched a BCSO deputy, and when Defendant Davis entered his property without a warrant in retaliation for Plaintiff's protected speech—his criticisms and threats to file a police report and/or a lawsuit. The record establishes no Defendant violated Plaintiff's clearly established constitutional rights; thus Defendants are entitled to qualified immunity on Plaintiff's § 1983 claims.

### A.  Qualified Immunity

---

[35] 42 U.S.C. § 1983.

"Government officials performing discretionary functions are entitled to qualified immunity unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"[36] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" from litigation.[37] To prove they are entitled to qualified immunity, public officials must first show they were acting within the scope of their discretionary authority when the alleged misconduct took place.[38] If proven, the burden shifts to the plaintiff to show: (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged misconduct.[39] Here, Defendants were clearly acting within their discretionary authority at all times relevant to Plaintiff's claims. But, as set forth below, Plaintiff has failed to establish any violation of his First or Fourth Amendment rights. And even if he could establish such a violation, he cannot show that any such violation was clearly established when Defendants committed the acts complained of.

### 1. No Constitutional Violation

#### a. Fourth Amendment Unreasonable Search Claim

---

[36] *Metz v. Bridges*, 2024 WL 5088586, *2 (11th Cir. Dec. 12, 2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quotation marks omitted).

[37] *Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007).

[38] *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).

[39] *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013).

Plaintiff alleges Defendant Davis violated his Fourth Amendment right to be free from unreasonable searches when he entered Plaintiff's driveway and obtained his license plate number without a warrant or Plaintiff's permission. Plaintiff contends Defendant Davis unlawfully searched his home's curtilage without a warrant. But the evidence establishes Defendant Davis did not enter Plaintiff's curtilage.

The Fourth Amendment, applied to the states by the Fourteenth Amendment, provides, in pertinent part, that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated."[40] "The Supreme Court has interpreted this text to generally require law-enforcement officers to secure a search warrant before entering or searching within a home."[41] "That is so because, at the Fourth Amendment's very core is the right of an individual 'to retreat into his [or her] own home and there be free from unreasonable governmental intrusion.'"[42] "The same protection extends to 'the area immediately surrounding and associated with the home'—what courts refer to as the 'curtilage'—

---

[40] U.S. Const. amend. IV.

[41] *O'Kelley v. Curran*, 2023 WL 2889246, *6 (11th Cir. April 11, 2023) (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)).

[42] *Id.* (citing *Florida v. Jardines*, 569 U.S. 1, 6 (2013)).

which is regarded 'as part of the home itself for Fourth Amendment purposes.'"[43]

"Subject to a few exceptions, the Fourth Amendment prohibits law enforcement from entering a home or its curtilage to conduct a search without a warrant."[44]

The curtilage may include the portion of a driveway that is "adjacent to the home and 'to which the activity of home life extends.'"[45] "In *Collins v. Virginia*, the Supreme Court concluded that an area at the top of a driveway adjacent to the home was curtilage where the area was located behind the front perimeter of the house, was enclosed on two sides by a brick wall and on the third side by the house, had direct access to the house itself through a door in the side of the house that formed part of the enclosure, and was not part of the path that a visitor would take from the street to the front door of the house."[46]

"Questions about whether an area is curtilage 'should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from

---

[43] *Id.* (quoting *Jardines*, 569 U.S. at 6).
[44] *United States v. Stephen*, 823 F. App'x 751, 754 (11th Cir. 2020) (citing *United States v. Walker*, 799 F.3d 1361, 1363 (11th Cir. 2015)).
[45] *Collins v. Virginia*, 584 U.S. 586, 593 (citations omitted).
[46] *Stephen*, 823 F. App'x at 754 (citing *Collins*, 584 U.S. at 594-95).

observation by people passing by.'"[47] The "central component of this inquiry" is "whether the area harbors the 'intimate activity associated with the sanctity of a man's home and the privacies of life'"; in other words, "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of the Fourth Amendment."[48]

Applying these factors, the portion of Plaintiff's driveway where Officer Davis walked to obtain the license plate information was not part of the curtilage to Plaintiff's home. Although the car was parked close to the street, the driveway was short, so the car was also not far from the house. Thus, the first *Dunn* factor provides some support for Plaintiff's argument that Defendant Davis encroached on the curtilage. But the remaining factors weigh against him. The driveway was not gated, covered, enclosed, or partly enclosed. It does not appear that any portion of the driveway where Davis walked was used as a porch or patio or otherwise served as an extension of Plaintiff's home. The driveway appears to be a place to park cars, and it forms the path that visitors would naturally take to walk to the front door. Nothing in the record indicates that Officer Davis or any other officer entered an area harboring the "intimate activity associated

---

[47] *Id.* (quoting *United States v. Dunn*, 480 U.S. 294, 301 (1987)).
[48] *Id.*

with the sanctity of a man's home and the privacies of life" when Davis approached Plaintiff's vehicle and wrote down the license plate information. Because Defendant Davis did not enter the curtilage of Plaintiff's home, he did not need a warrant to approach Plaintiff's vehicle and retrieve the license plate information. Thus, no Defendant violated Plaintiff's Fourth Amendment rights.

### b. First Amendment Retaliation

Plaintiff also alleges Defendants unlawfully retaliated against him in violation of his First Amendment rights. Plaintiff contends Defendants requested that he provide identification, threatened to dispatch a BCSO deputy to forcibly obtain Plaintiff's identification, and entered his property without a warrant to obtain license plate information in retaliation for Plaintiff's criticisms of Defendant Ambrose after he broke his glass jar and his expressed intentions to file a police report and/or lawsuit against Defendants. Because no evidence shows Defendants' actions adversely affected Plaintiff's protected speech or shows a causal connection between any allegedly adverse effects on Plaintiff's protected speech and Defendants' allegedly retaliatory actions, Defendants are entitled to qualified immunity on Plaintiff's First Amendment retaliation claims.

The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech."[49] "To make out a First Amendment retaliation claim, [Plaintiff] has to show that (1) his speech was constitutionally protected; (2) he suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech; and (3) there was a causal relationship between the adverse conduct and the protected speech."[50]

Defendants concede that Plaintiff's verbal criticisms and challenges were constitutionally protected speech. But the record contains no evidence Plaintiff suffered any adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech. Plaintiff was not arrested or ultimately issued a citation, as Plaintiff voluntarily surrendered all of the dogs on his property.[51] Indeed, the video

---

[49] *Nieves v. Bartlett*, 587 U.S. 391 (2019) (internal quotation marks and citation omitted).

[50] *Jarrard v. Sheriff of Polk County*, 115 F.4th 1306, 1315-16 (11th Cir. 2024) (internal quotation marks and citation omitted).

[51] Initially, Defendant Ambrose did not take Plaintiff's adult female dog, as he believed there was only space at the dog shelter for the puppies. Because the adult female dog was not spayed, Defendant Ambrose informed Plaintiff he would receive a citation for failure to spay in accordance with the City ordinance, and Defendant Adams informed Plaintiff if he spayed the female dog before the court date on the citation, the citation would be dismissed. Ultimately, Defendant Adams determined the shelter had sufficient space for the female dog, and she was taken with the puppies. No citation was issued.

evidence shows Defendants were cordial, displayed no hostility toward Plaintiff, and had no reaction to Plaintiff's statements.[52]

Even if Defendant Adams' decision to call for BCSO assistance could be determined adverse conduct that would likely deter a person of ordinary firmness from engaging in protected speech, Plaintiff fails to establish the required causal connection necessary to sustain a First Amendment retaliation claim. "In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech."[53] But, "once the plaintiff shows that h[is] protected conduct was a motivating factor, the burden shifts to the defendant to show that she would have taken the same action in the absence of the protected conduct, in which case the defendant cannot be held liable."[54] Here, the video evidence establishes

---

[52] In the process of capturing the puppies, Defendant Ambrose knocked a glass jar to the ground, causing it to break. Plaintiff alleges in his Complaint that "[u]pon witnessing the damage to his property, the Plaintiff admonished Defendant [Ambrose] and told him he will be filing a police report and sue him. Upon hearing that[,] the Defendant became loud, animated and hostile and demanded the Plaintiff to Produce and Present his ID to him as it was a requisite." Pl. Compl., ¶ 13. But the video footage conclusively refutes Plaintiff's version of events. Defendant Ambrose displayed no hostility in response to Plaintiff's criticisms. Instead, Ambrose called Defendant Adams, who informed Ambrose the BCSO deputies would take a report from Plaintiff about the property damage when they arrived. The Court is not required to accept Plaintiff's version of the facts when they are clearly refuted by video evidence in the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Plaintiff ultimately decided not to file a property damage report.

[53] *Castle v. Appalachian Tech. College*, 631 F.3d 1194, 1197 (11th Cir. 2011) (citing *Smith v. Moseley*, 532 F.3d 1270, 1278 (11th Cir. 2008)).

[54] *Id.* (citing *Smith*, 532 F.3d at 1278 and *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 US. 274 (1977)).

that Defendant Adams would have taken—and did, in fact, take—the same action in the absence of Plaintiff's protected statements that he wanted to file a report, complaint, and/or lawsuit. After it was decided Plaintiff would receive no citation, Defendant Adams explained to Defendant Ambrose that a deputy still needed to come to Plaintiff's residence to take a property damage report from Plaintiff regarding the broken jar. Thus, Plaintiff cannot maintain a First Amendment retaliation claim, and Defendants are entitled to summary judgment.

### 2.  No Violation of Clearly Established Law

Even if Plaintiff could show a constitutional violation, he cannot show a violation of his clearly established First or Fourth Amendment rights. There are three recognized ways a plaintiff can show that a law is clearly established.[55] First, Plaintiff can point to a case with materially similar facts decided by the Supreme Court, the Eleventh Circuit, or the highest court of the relevant state.[56] Second, Plaintiff can show "a broader, clearly established principle should control the novel facts in this situation."[57] This principle must be "specific enough to give the officers notice of the clearly established right."[58]

---

[55] *Sebastian v. Ortiz*, 370 F.3d 1301, 1310 (11th Cir. 2019).
[56] *Id.*
[57] *Id.* (quotation marks and citation omitted).
[58] *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).

Finally, "the plaintiff can show that the conduct at issue so obviously violated the Constitution that prior case law is unnecessary."[59] "The relevant dispositive inquiry in determining whether a right is <u>clearly</u> established is whether it would be <u>clear</u> to a reasonable [individual in the defendant's position] that his conduct was unlawful in the situation he confronted."[60] Although a plaintiff "need not demonstrate that there is case-law specifically addressing his factual scenario, existing precedent must have placed the statutory or constitutional question beyond debate."[61]

No binding case law put the officers on notice that their conduct was unlawful in the situation they confronted, nor do the broader First or Fourth Amendment principles on which Plaintiff relies proscribe Defendants' conduct. Finally, Defendants' conduct did not so obviously violate the Constitution that prior case law is unnecessary. Thus, Defendants are entitled to qualified immunity.

## B. Supervisory Liability

To the extent Plaintiff brings a supervisory liability claim against Defendant Adams, his claim fails as a matter of law. Supervisors are liable under § 1983 "either when the supervisor personally participates in the alleged constitutional violation or

---

[59] *J.W. ex rel. Williams v. Birmingham Bd. of Educ.,* 904 F.3d 1248, 1259-60 (11th Cir. 2018).
[60] *Morris v. Town of Lexington, Ala.,* 748 F.3d 13161322 (11th Cir. 2014) (emphasis in the original).
[61] *Id.* (internal quotation marks and citation omitted).

when there is a causal connection between actions of the supervising official and the alleged constitutional violation."[62] "A causal connection can be established by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."[63] A supervisor cannot be held liable "for merely being [a] commanding officer and having responsibility for [another officer's] training and supervision."[64] Thus, to sustain a supervisory liability claim against Defendant Adams, Plaintiff must show "(1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to [his] constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct."[65]

Here, there is no constitutional violation; as such, there can be no supervisory liability.[66] Moreover, nothing in the record reflects a causal connection between actions of

---

[62] *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).

[63] *Id.* (citations and internal quotation marks omitted).

[64] *Id.*

[65] *Barr v. Gee*, 437 F. App'x 865, 875 (11th Cir. 2011).

[66] *See, e.g., Taylor v. Taylor*, 649 F. App'x 737, 747 (11th Cir. 2016) ("For a supervisor to be liable, there must be an underlying constitutional or statutory violation.") (citations omitted).

the supervising official and any alleged constitutional violation. Thus, Defendant Adams is entitled to summary judgment on any alleged supervisory liability claim.

## II. Georgia State Law Claims

Plaintiff also asserts Defendants trespassed on his property and engaged in an unlawful civil conspiracy in violation of Georgia state law. As explained below, Plaintiff's claims fail as a matter of law.

### A. Trespass

Plaintiff alleges Defendant Davis unlawfully trespassed on his property to obtain the information from his license plate. In Georgia, a person commits a trespass if he "unlawfully interferes" with "[t]he right of enjoyment of private property."[67] As explained above and established by the record in this case, neither Defendant Davis nor any other Defendant unlawfully entered or interfered with Plaintiff's property. Moreover, Defendants are entitled to official immunity. "[U]nder the Georgia Constitution, state officials are entitled to official immunity for their discretionary actions unless they acted with 'actual malice' or an 'actual intent to cause injury.'"[68] Neither

---

[67] O.C.G.A. § 51-9-1; *see also Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016) (citing O.C.G.A. § 51-9-1).

[68] *Wigington*, 811 F.2d at 1266 (citing Ga. Const. art. I, § 2, ¶ IX(d)).

unreasonable nor recklessly illegal conduct supports an inference of actual malice.[69] Nothing in this record suggests that any Defendant acted with actual malice. Thus, Defendants are entitled to summary judgment on Plaintiff's trespass claim.

## B. Conspiracy

Finally, Plaintiff alleges Defendants conspired to interfere with the use and benefit of his property. To establish a claim of civil conspiracy, Plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort—here, trespass.[70] Because Defendants did not trespass or commit any other tort, there can be no liability for conspiracy.[71]

## CONCLUSION

Based on the foregoing, Defendants' Motions for Summary Judgment [Docs. 31, 32, and 50] are **GRANTED**.

**SO ORDERED,** this 28th day of March, 2025.

S/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[69] *Id.* (citations omitted).
[70] *Argentum Intern, LLC v. Woods*, 280 Ga. App. 440, 444 (2006).
[71] *Miller v. Lomax*, 266 Ga. App. 93, 103 (2004) (citation omitted).

21